UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ROBERT REESE,

        Plaintiff,                    Case No. 1:21-cv-492

v.                                                Honorable Jane M. Beckering

B. WEST et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 3.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County,

Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Resident Unit Manager (RUM) B. West and Acting RUM T. Antes.

Plaintiff alleges that on November 21, 2021, he was involved in an altercation with another prisoner and, as a result, was taken to the Temporary Segregation Unit.  (ECF No. 1, PageID.2.)  He received a Class 1 misconduct for fighting and was placed on non-bond status and remanded to temporary segregation pending an administrative hearing.  (*Id.*)  On November 13, 2021, Plaintiff's personal property was inventoried by Counselor Parsons.  (*Id.*)  During that inventory, Counselor Parsons determined that Plaintiff had excess property in violation of MDOC Policy Directive 04.07.112 ¶ C.  (*Id.*)

Under the MDOC Policy Directive, once it is believed that a prisoner is in possession of contraband, the contraband "shall be confiscated."  MDOC Policy Directive 04.07.112 ¶ FF.  The confiscation will lead to the issuance of either a misconduct report for the possession of contraband or a Notice of Intent to Conduct an Administrative Hearing.  *Id.*  Plaintiff was issued a Notice of Intent.  The policy directive contemplates that the prisoner might waive the administrative hearing and reach agreement with staff on a disposition of the contraband property.  *Id.* at ¶ GG.  The policy directive also permits a staff person to review the Notice of Intent with the prisoner.

In Plaintiff's case, on November 24, 2021, Officer Cooper reviewed the Notice of Intent with Plaintiff.  Cooper asked if Plaintiff wanted to agree to a proposed disposition and waive his hearing or request an administrative hearing, as contemplated by the policy.  Cooper indicated that Plaintiff would never prevail.  Nonetheless, Plaintiff requested an administrative hearing to present his position that the property was not contraband.

On November 30, 2021, Defendant West held the administrative hearing. Plaintiff argued that person who confiscated the alleged contraband had not "itemize[d] consumable/expendable [property] with the 'price point' for each item to determine if said total items accumulated in excess of the $250 limit." (Compl., ECF No. 1, PageID.2.) Plaintiff claimed further that absent that itemization, his property could not be determined to be contraband. Plaintiff also asserted that MDOC policy permitted him a 30-day grace period after he received property that exceeded the value limit. Finally, Plaintiff informed the hearing officer that if Plaintiff was not "afforded due process" he would pursue an administrative grievance.[1]

Plaintiff alleges that Defendant West took offense at Plaintiff's arguments that the property was not contraband or that Plaintiff was being denied due process. In response to Plaintiff's challenge, West said because Plaintiff "want[ed] to tell [West] how to do [his] job" that he was disposing of Plaintiff's property regardless of his rights and told Plaintiff that he—West—determined what rights Plaintiff had. (*Id.*) Plaintiff suggested that Defendant West make his response a part of the administrative record; Defendant West did not respond and "excused himself from the hearings area." (*Id.*, PageID.3.)

Thereafter, West issued an administrative hearing report. (*Id.*) Plaintiff claims that Defendant West omitted relevant portions of Plaintiff's testimony regarding his procedural due process claim, as well as the "retaliatory statements made by Defendant in which Plaintiff indicated during [the] hearing [should] be made part of the record." (*Id.*) Defendant West's report indicated that Plaintiff's property was to be disposed of, regardless of his ability to appeal and obtain the property if he succeeded on such appeal. (*Id.*) The policy directive requires the hearing officer to

---

[1] The policy directive contemplates that a prisoner dissatisfied with the result of the hearing could pursue administrative remedies. MDOC Policy Directive 04.07.112 ¶ MM. Filing a grievance is the proper procedure to appeal the hearing officer's decision.

determine the disposition of the property. With the exception of specific categories of property—weapons, food items, money and postage, and the property of others—all of the disposal options take effect only after the exhaustion of administrative remedies. MDOC Policy Directive 04.07.112 ¶ MM.

Notably, Plaintiff neither describes the property at issue beyond his vague description that it was "consumable/expendable," nor does he allege that the aggregate value did not exceed $250. Furthermore, he does not allege whether or not the property was actually disposed of before the exhaustion of administrative remedies, or whether a disposition before exhaustion would have been appropriate, and he does not describe how his subsequent grievance/appeal of the decision was resolved. Plaintiff does note that he pursued a grievance against Defendant West and that all of his claims have been administratively exhausted.

Plaintiff's pursuit of his administrative remedy against West gave rise to his claims against Defendant Antes. On December 2, 2020, Plaintiff filed an administrative grievance regarding Defendant West's actions. (Compl., ECF No. 1, PageID.3.) On December 16, 2020, he was interviewed by Defendant Antes regarding the grievance. (*Id.*) The interview is one of the first steps of the response to an administrative grievance. When the grievance coordinator accepts a grievance, he or she must assign a respondent. The grievance policy directive requires the respondent to interview the grievant "to clarify issues of merit, to further an investigation, or otherwise aid in resolution of the grievance." MDOC Policy Directive 03.02.130 ¶ AA. The respondent then prepares a response and that response is reviewed by the respondent's supervisor.

Apparently, Defendant Antes was assigned to respond to Plaintiff's grievance. Defendant Antes told Plaintiff that if he agreed to refrain from filing any other complaints and grievances, including appeals, about the matter, he would make sure that Plaintiff received due

process and got his property back if it had not already been disposed of.² (Compl., ECF No. 1, PageID.3.)  He told Plaintiff that if he made a "big deal" out of the issue, his personal property would be disposed of.  (*Id.*)  Plaintiff asked Defendant Antes if the conversation could be made part of the grievance record; Defendant Antes did not respond and dismissed Plaintiff from the hearings area.  (*Id.*)

Based on the foregoing, Plaintiff asserts that Defendant West's conduct during the hearing and his hearing decision violated Plaintiff's First Amendment rights and his Fourteenth Amendment due process rights.  He further asserts that Defendant Antes violated his First Amendment rights by threatening to dispose of Plaintiff's personal property if Plaintiff continued to make a "big deal" of the issue.  (*Id.*, PageID.3–4.)  Finally, Plaintiff suggests that Defendants violated his Fourteenth Amendment due process rights by failing to make their statements a part of the record "as required under Mich. Comp. Law 791.3 et seq." and by conducting his hearing in a manner unauthorized by MDOC policy.  (*Id.*, PageID.4.)  He also asserts "the tort of gross negligence."  (*Id.*, PageID.1.)  Plaintiff seeks compensatory and punitive damages, as well as a jury trial and recovery of costs.  (*Id.*, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

² The uncertainty regarding whether or not Plaintiff's property had been disposed of at the time of the interview suggests that West did not direct the immediate disposition of Plaintiff's property even if West concluded that the property should be disposed of.

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:

6

(1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff maintains that Defendant West decided to dispose of his personal property to retaliate against Plaintiff for Plaintiff's opposition to disposition of the contraband property. (ECF No. 1, PageID.3.) He also alleges that Defendant Antes retaliated against him by threatening to ensure that Plaintiff's personal property was disposed of if he chose to continue to pursue his complaint/grievance regarding the matter. (*Id.*)

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Plaintiff, therefore, has alleged sufficient facts to meet the first element of a

7

retaliation claim. Plaintiff's statements to West at the hearing and his filing and continued pursuit of a grievance against West are protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

In the abstract, taking a prisoner's property fits the definition of adverse action. *See id.* at 604 (noting that a number of cases from other circuits have held that confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim). But certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003). It is impossible to say whether the prospect of losing the property at issue here was more than *de minimis* because Plaintiff has failed to identify what property is at issue.

For purposes of this preliminary review, the Court will presume that the property was of sufficient value to make the prospect of its loss a deterrent to protected action. Even then, however, the situations Plaintiff describes are not the straightforward circumstance of a corrections officer threatening to take a prisoner's property unless he foregoes protected conduct.

Examining first the contraband hearing, the hearing officer is charged with determining whether or not the property is contraband. If it is, the property will be disposed of; if

it is not, the property will be returned to the prisoner. If the prisoner does not oppose the confiscator's initial determination that the property is contraband, the prisoner will lose the property. And, in the hearing as Plaintiff describes it, if he does oppose the confiscator's initial determination Defendant West will be so offended by Plaintiff's hubris that Plaintiff will lose the property. Despite Plaintiff's suggestion to the contrary, there are no facts alleged that support the inference that the loss of the property in the first situation is any different than the loss of the property in the second situation. There is no reason to believe that the prospect of losing the property for opposing the confiscation is any more daunting than the prospect of losing the property for not opposing the confiscation. Plaintiff's allegations, therefore, do not support the inference that West's "threats" would deter a person of ordinary firmness from engaging in the protected conduct. And, although not particularly material to the sufficiency of Plaintiff's allegations, it is noteworthy that Plaintiff was not deterred at all.

The choice presented to Plaintiff by Defendant Antes was not the same as the choice presented by West. Antes said "if you agree to not filing any other complaints/grievances in this matter including appeal, or otherwise, I will make sure that you (Plaintiff) receive the due process you should have gotten and make sure you obtain your property back . . . ." (Compl., ECF No. 1, PageID.3.) That is not a threat at all. That is a settlement offer. That is not adverse action and would not deter a person of ordinary firmness from engaging in protected conduct.

Moreover, the threat that not accepting the settlement and walking away would result in the loss of the property—the "stick" that encouraged Plaintiff to accept the "carrot" of the settlement—is not adverse action either. First, Antes was charged with responding to the grievance. His statement could reasonably be interpreted as a simple prediction of the merits of

Plaintiff's claim. Such a prediction would not deter a person of ordinary firmness from going forward with the grievance.

Second, many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim).

And finally, Antes was not the final arbiter of the disposition of Plaintiff's property. Antes' grievance response was subject to review by Antes' supervisor before it would become the final Step I response. MDOC Policy Directive 03.02.130 ¶ BB (Eff. Mar. 3, 2019). Then, if Plaintiff wished to proceed further, the Step I response would be subject to review by the warden or a deputy warden at Step II. *Id.* ¶¶ BB–GG. Then, if Plaintiff were still dissatisfied, he could proceed to Step III and obtain review from the MDOC Grievance Section on behalf of the director. *Id.* ¶¶ HH–II. Thus, even if Antes' statements were properly interpreted as a threat, the prospect

of three additional levels of review would moot the deterrent impact of the threat. A person of ordinary firmness would not yield.

Because Plaintiff has failed to adequately allege an adverse action, he has failed to state a First Amendment retaliation claim.

### B. Fourteenth Amendment Due Process

Plaintiff asserts that Defendants violated his due process rights by disposing of his personal property. (ECF No. 1, PageID.3.) Plaintiff's claim is barred by the doctrine set forth in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Upon review of the complaint, the Court concludes that Plaintiff has not sustained his burden in this matter because he has not alleged that state post-deprivation remedies are inadequate. Moreover, Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ b (eff. Dec. 12, 2013). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the

State Administrative Board.  Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013).  Finally, Michigan law authorized actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers."  Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013).  The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Plaintiff's due process claims against Defendants regarding his property will, therefore, be dismissed.

Plaintiff also suggests that Defendants violated his due process rights by failing to include their "invective statements" as part of the administrative record concerning his grievance hearing.  (ECF No. 1, PageID.4.)  A state, however, "has no federal due process obligation to follow all of its own grievance procedures."  *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003).  Moreover, Plaintiff does not have a constitutionally protected right in a grievance procedure or the right to an effective procedure.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have also found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.") (listing cases); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (noting that "there is no inherent constitutional right to an effective prison grievance procedure").  Plaintiff, therefore, cannot maintain his due process claim predicated upon Defendants' failure to include their "invective statements" in the administrative grievance record.

C.   **Violation of MDOC Policy and State Law**

Plaintiff appears to suggest that Defendants' actions violated MDOC policy and State law.  (ECF No. 1, PageID.3–4.)  However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v.*

12

*Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Claims under Section 1983 do not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).  The only possible way a policy might enjoy constitutional protection would be through the Due Process Clause.

To demonstrate such a due process violation, a plaintiff must prove the following elements:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Courts have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164.  Plaintiff's allegations that Defendants violated MDOC policy, therefore, fail to raise a cognizable federal constitutional claim.

    **D.**    **Gross Negligence Claim**

Plaintiff asserts that he is also alleging "the tort of gross negligence," a state-law claim. (ECF No. 1, PageID.1.)  To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim,

it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S.

14

438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    February 3, 2022                                  /s/ Jane M. Beckering
                                                            Jane M. Beckering
                                                            United States District Judge